UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SARA BLOOMBERG,

                                     CASE NO.: 3:21-cv-00575-32-JRK

       Plaintiff,

v.

JEREMIAH RAY BLOCKER, in his
personal and professional capacity
as the chair of St. Johns County Board
of County Commissioners, and as
Commissioner for District 4; and the
St. JOHNS COUNTY BOARD OF
COUNTY COMMISSIONERS

       Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT (ECF 13)**

Defendants, the ST. JOHNS COUNTY BOARD OF COUNTY COMMISSIONERS (the "County" or "the Board") and JEREMIAH RAY BLOCKER, sued in his "personal" and "professional" capacities as the chair of the St. Johns County Board of County Commissioners and Commissioner for District 4 (collectively, "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), move the Court to dismiss Plaintiff's First Amended Complaint for Declaratory Judgment and Injunctive and Other Relief (ECF 13) ("Amended Complaint") with prejudice. Defendants' arguments in support of this Motion are set forth in the Memorandum of Law, below.

## MEMORANDUM OF LAW

### I.  Background

The Amended Complaint centers around a proposed governmental proclamation that Plaintiff allegedly emailed to St. Johns County Commissioner Henry Dean on March 8, 2021 in order to have the Board "publicly hear or put to a vote" the proclamation at a Board meeting.  ECF 13, ¶¶ 1, 23, 33. The proclamation addresses issues involving "Lesbian, Gay, Bi-sexual, Transgender, Queer/Questioning, Intersex, and Asexual (LGBTQIA+) people." ECF 13-1. Plaintiff further alleges that "the refusal to allow the discussion of an agenda item[1] in regards to the Lesbian, Gay, Bisexual, Transgender, and Queer community" serves as a basis for the alleged violations of law.  ECF 13, ¶ 1.

#### A.  Florida Law Governing County Operations

An understanding of the laws and rules surrounding local government operations and meetings is critical to an understanding of the allegations in the Amended Complaint. Pursuant to Chapter 125, Florida Statutes, the legislative and governing body of a county shall have the power to carry on county government.

---

[1] Though the allegations in the Amended Complaint are taken as true for purposes of this motion, a couple of inaccuracies or inconsistencies are worth noting nonetheless.

First, the allegation in Paragraph 1 of the Amended Complaint, "seeking relief from the refusal to allow the discussion of an agenda item" seems to suggest that the proclamation in question actually was an agenda item and that Defendants refused to allow discussion on it. This conflicts with the later allegation of Paragraph 15 that Plaintiff's request to put the proclamation on the agenda had been denied.  Defendants assume here that Plaintiff did not intend to represent that Plaintiff's proclamation was ever placed on the Board's agenda.

Second, Plaintiff purports to have attached as Exhibit A (ECF 13-1) the proclamation that they sent to Commissioner Dean. ECF 13-1. However, Exhibit A contains important differences from the only version the County has thus far identified in its files.

Fla. Stat. § 125.01(1). This includes the power to "[a]dopt its own rules of procedure, select its officers, and set the time and place of its official meetings." Id. at (a). St. Johns County has adopted by resolution "Rules and Policies," the purpose of which is "the efficient operation of the Board." ECF 10-1, Rule 1.104.[2]

Chapter 125, Florida Statutes lists numerous county functions and provides that "[t]he provisions of this section shall be liberally construed in order to effectively carry out the purpose of this section and to secure for the counties the broad exercise of home rule powers authorized by the State Constitution." Fla. Stat. § 125.01(3)(b). St. Johns County has five elected County Commissioners, from and by which are elected a Chair and Vice-Chair. ECF 10-1, Rule 1.205.

B.    The Board Agenda

County administrative operations are conducted by the County Administrator, who reports to the elected Board. Fla. Stat. § 125.73(1); ECF 10-1, Rule 1.501(A). The County Administrator prepares the agenda for the Board's meetings "in accordance with the Board's instructions." Rule 1.506. Rule 1.301(D) authorizes the Chair to "[a]uthorize the placing of items on the regular agenda, and order removal of items from the consent agenda." ECF 10-1, Rule 1.301(d).

---

[2] The Amended Complaint cites several of these Rules and Procedures, the entirety of which were previously filed in ECF 10-1. It is permissible for the Court to consider the Board Rules and Policies in this situation without converting this motion to dismiss into a motion for summary judgment. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); Ladd v. City of West Palm Beach, 681 F. App'x. 814, fn 2 (11th Cir. 2017).

Procedurally, the County Administrator first prepares a tentative agenda, which is then provided to the Chair, who then sets the agenda after making any additions or deletions deemed appropriate and prioritizing the items on the agenda, with the assistance of the County Administrator.  Rule 4.301.  The Clerk of the Board then prints and distributes the set agenda for the meeting.  Id.

Though the Chair is uniquely empowered to set the agenda, Rule 4.303, Board members may have input in the agenda, as well. Rule 1.506 (Agenda is set "in accordance with the Board's instructions"). Before the meeting agenda is set, any commissioner may request that an item be placed on the agenda.  Rule 4.301. Rule 4.303 outlines the rights of Board members to request changes and additions to the agenda after it has been set, but before it has been adopted by the Board:

> After the addition of any item removed from the Consent Agenda, the Chair will ask for other changes to the agenda. Changes to the Regular Agenda may be proposed by any Commissioner, the County Administrator or the County Attorney. Changes to the Regular Agenda must be approved by majority vote. After all approved changes on the agenda a motion shall be made and seconded to adopt the agenda. Once adopted the agenda shall control the meeting unless changed by a majority consensus.

ECF 10-1, Rule 4.303 (emphasis added).  These additions and removals take place at public Board meetings.  ECF 13-8 at 10.

C.   Public Opportunity to Address the Board

Certain limited periods of each Board meeting have been opened for public comment by, and in accordance with, Florida law and County rules.  Fla. Stat. § 286.0114(2) ("Members of the public shall be given a reasonable opportunity to be

heard on a proposition before a board or commission."); Rule 4.704(B) (same). The statutory opportunity to be heard is subject to rules or policies adopted by the local board and expressly does not apply to certain parts of the meeting. Fla. Stat. § 286.0114(2), (3).

Both Florida law and County rule recognize, in particular, that those portions of Board meeting constituting "[a] n official act involving no more than a ministerial act, including, but not limited to, approval of minutes and <u>ceremonial proclamations</u>" have not been opened for, and do not require, public comment. Fla. Stat. § 286.0114(3)(b) (emphasis added); Rule 4.704.B.1(a).

Although neither Florida law nor County rule provides a right to public comment as part of ceremonial proclamations, and Florida law has only opened up meetings to public comment on propositions before the Board, the County does allow for a specified "general public comment period" during a board meeting where persons may address the Board on topics not on the agenda. Rule 4.704(C) provides:

> For public comment on items that are not a proposition being considered by the Board, a general public comment period shall be provided for persons to address the Board on matters which reasonably may need attention of the Board. Each person addressing the Board shall limit comments to three (3) minutes, unless extended by the Chair for good cause.

Citizens routinely exercise the opportunity to speak during the general public comment period of Board meetings. ECF 13-8 at 3.

### D.   Proclamations

St. Johns County, like many local governments, sometimes issues proclamations in accordance with its rules at the beginning of its regular meetings. By their nature, proclamations are the speech of the Board.  The County's webpage on proclamations explains:

> A proclamation is an official document endorsed by the entire St. Johns County Board of County Commissioners to commemorate a specific time period, event, or accomplishment impacting a large number of St. Johns County, Florida, or United States residents. They may also be given for the purpose of raising awareness about an issue, to celebrate a milestone, or serve as an expression of support for individuals, community organizations, and businesses.

Proclamations, Certificate of Recognition, and Presentation Requests, St. Johns County Government, http://www.sjcfl.us/Proclamations/index.aspx (last visited Aug. 9, 2021). Per Rule 1.301(F), the Board chair may "[p]resent or designate another commissioner to present awards, resolutions and honors presented on behalf of the Board."

## II.   Standard of Review

Federal Rules of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss, the Court must limit its consideration to well pled factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in a Plaintiff's Complaint as true and take them in the light most favorable to the

plaintiff. <u>Pielage v. McConnell</u>, 516 F.3d 1282 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a presumption of truth. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) (discussing a Rule 12(b)(6) dismissal); <u>Marsh v. Butler Cty.</u>, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.' " <u>Id</u>. 550 U.S. at 570).

## III.   Argument

### A.     <u>Plaintiff Lacks Article III Standing</u>

Article III of the U.S. Constitution grants federal courts jurisdiction only over enumerated categories of "cases" and "controversies." U.S. Const. Art. III, § 2. "[T]here are three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement." <u>Christian Coal. of Fla., Inc. v. United States</u>, 662 F.3d 1182, 1189 (11th Cir. 2011). Recently, the Eleventh Circuit, in reviewing a district court's dismissal of a

complaint, made it very clear that the court should first analyze the threshold question of whether a plaintiff has established Article III standing before addressing the merits of the case.  Gardner v. Mutz, 962 F.3d 1329, 1336 (11th Cir. 2020). Because "Federal courts are courts of limited jurisdiction," the order of analysis matters.  Id. (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).  Indeed, in Gardner, the court noted that "jurisdiction should be evaluated before, and separately from the merits" and that the Court has "'a special obligation to satisfy [itself] . . . of [its] own jurisdiction' before proceeding to the merits . . . ."  Gardner, 962 F.3d at 1336.

Supreme Court cases have established that the constitutional minimum of standing contains three elements:  "(1) an 'injury in fact'—an invasion of a legally protected interest that is both (a) 'concrete and particularized' and (b) 'actual or imminent, not conjectural or hypothetical'; (2) a 'causal connection' between [the plaintiff's] injury and the challenged action of the defendant; and (3) a likel[ihood], not merely speculati[on], that a favorable judgment will redress [the] injury." Gardner, 962 F.3d at 1338 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).

Plaintiff must establish these three "irreducible constitutional minimum[s]" for each claim. Lujan, 504 U.S. at 560. The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561 (1992).  Failure to establish standing provides grounds to dismiss under Rule 12(b)(1).

Plaintiff's claims center on the fact that the Board declined to issue or to place on the agenda the proposed proclamation that Plaintiff emailed to the County "celebrating LGTBQ civil rights progress and the contributions of LGBTQ individuals to the St. Johns County community." ECF 13 ¶ 12, Exhibit A. To establish standing, however, Plaintiff must show a "legally protected interest" that is "concrete and particularized" and that the Defendants violated Plaintiff's "legally protected interest."

As explained below, no citizen, including Plaintiff, has the legal right to set the Board's agenda; certainly no law supports Plaintiff's demand that the Board debate its ceremonial agenda. Without such a right, Plaintiff has no standing and the Court lacks jurisdiction over Plaintiff's claims, which are due to be dismissed.

B.   <u>Count I Fails to Properly Allege a First Amendment Violation</u>

Plaintiff's Free Speech claim in Count I should be dismissed with prejudice because Plaintiff has failed to establish a constitutional violation. The subject of the Amended Complaint is the proclamation that Plaintiff seeks to have the Board proclaim. Such a proclamation would be the Board's speech. The Amended Complaint does not identify how *Plaintiff's* right to free speech has been impaired by the Board or any other defendant.

Plaintiff asserts a constitutional claim via 42 U.S.C. § 1983, which provides:

"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured

in an action at law, suit in equity, or other property proceeding for redress . . . ."

42 U.S.C. § 1983 (2012). "[T]o impose § 1983 liability on a county, a plaintiff must show: (1) that their constitutional rights were violated; (2) that the county had a custom or policy that constituted deliberate indifference to the constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).  Here, Plaintiff has failed to establish the first prong above because plaintiff's  constitutional right to free speech has not been violated.

Count I of Plaintiff's Amended Complaint alleges that "Defendants refused to publicly hear or put to a vote the Plaintiff's request for the LGBTQ Pride Proclamation."  ECF 13 ¶ 33.  Plaintiff acknowledges that the Board's decision whether to issue the proclamation is government speech, but claims that "the content-based restriction to refuse to even put the LGBTQ Proclamation on the agenda was an unlawful restraint." ECF 13, ¶35.  Plaintiff alleges that "[b]y refusing to even publicly hear or put to a vote the Plaintiff's request for the LGBTQ pride Proclamation, the Defendants, acting under color of state law, have deprived the Plaintiff of the right to freedom of speech in violation of the First Amendment to the United States Constitution . . . ."  ECF 13 ¶44.

The Plaintiff is correct that a proclamation by a governmental board is the Board's speech, not Plaintiff's speech.  Accordingly, Plaintiff's allegation that a "content-based" decision by the Board of what content the Board chooses to

proclaim cannot form the basis for a claim that the Board is suppressing *Plaintiff's* right to free speech. Defendants acknowledge the breadth of law limiting a government's ability to engage in content-based restrictions on a *citizen's* right to free speech. However, this is not the situation in Plaintiff's case.

While the Amended Complaint cites to legal authority in Count I, all of that authority addresses a citizen's right to free speech, and none provides for a court to order a government to speak. Instead, Plaintiff cites to distinguishable cases in which a government has passed laws impacting citizens' speech rights. Reed v. Town of Gilbert, Ariz., 576 U.S. 155. 163 (2015) (holding that government's content-based sign code was an unconstitutional restriction on citizens' rights to free speech); Wollschlaeger v. Governor, Florida, 848 F.3d 1293, 1300 (11th Cir. 2017) (holding the Florida's Firearms Owners' Privacy Act to be unconstitutional content-based restrictions on the speech of doctors and medical professionals on the subject of firearm ownership). The principles that guided the discussion of the First Amendment in these cases are simply inapplicable in this case.

The United States Supreme Court has addressed the parameters of government speech in Walker v. Texas Division, Sons of Confederate Veterans, 576 U.S. 200 (2015). There, a nonprofit organization brought a § 1983 action alleging that the Texas Department of Motor Vehicles Board violated its First and Fourteenth Amendment right to free speech when it denied an organization's application for a specialty license plate featuring a Confederate battle flag. The Supreme Court decided whether the rejection violated the Constitution's free

speech guarantees and concluded that it did not because license plates constitute government speech, not private speech.

When the government speaks, it is not barred by the First Amendment from determining the content of what it says. <u>Pleasant Grove City v. Summum</u>, 555 U.S. 460, 467–68 (2009). That the First Amendment does not apply to government speech, in part, reflects the fact that the democratic electoral process, first and foremost, provides a check on government speech. <u>Walker</u>, 576 U.S. at 207. When government exercises the "right to 'speak for itself'" it can "freely select the views that it wants to express." <u>Summum</u>, 555 US at 467-68.

The Supreme Court in <u>Summum</u> provides another useful analogy to the instant case as <u>Walker</u>, except through monuments installed on public land instead of custom license plate designs. In <u>Summum</u>, the Court held that the government speech doctrine clearly applied because "the City has 'effectively controlled' the messages sent by the monuments in the Park by exercising 'final approval authority' over their selection." <u>Id.</u> at 472-73. There is no dispute in the Amended Complaint that the Board does not also control the messages that its Board of County Commissioners proclaim through its vetting process. According to the Supreme Court, the First Amendment does not prohibit the County from doing so. "The fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message or transform the government's role into that of a mere forum-provider." <u>Walker</u>, 576 U.S. at 217.

In <u>Mech v. School Bd. of Palm Beach County, Fla.</u>, 806 F.3d 1070 (11th Cir. 2015) the Eleventh Circuit applied <u>Summum</u> and <u>Walker</u> to a banner program at public schools that allowed private businesses and individual sponsors to hang banners on school fences.  After three schools removed Mech's banners, he sued alleging violation of his First Amendment right to free speech. The Court found that the banner program constituted government speech and noted that one factor to be considered is whether observers of the signs reasonably believed that that government was endorsing the message.

In the instant case, the issuance of a proclamation, regardless of its symbolic nature, would very obviously be understood as a message endorsed by St. Johns County, which Plaintiff acknowledges.  Indeed, the County's website explains that "[a] proclamation is an official document endorsed by the entire St. Johns County Board of County Commissioners." <u>Proclamations, Certificate of Recognition, and Presentation Requests</u>, St. Johns County Government, <u>http://www.sjcfl.us/Proclamations/index.aspx</u> (last visited Aug. 9, 2021).

In the Amended Complaint, Plaintiff attempts to avoid the implications of the above caselaw by conceding that the proclamation is government speech, but contending that the refusal to place it on the agenda somehow restrained Plaintiff's speech. ECF 13, ¶ 35. However, the Eleventh Circuit has upheld local government's ability control its own meetings, including by restricting the topics on the meeting agenda, without running afoul of the First Amendment. <u>Thomas v. Howze</u>, 348 F. App'x 474, 478 (11th Cir. 2009) (rejecting First Amendment claim based on city's

refusal to place a citizen on a city council meeting agenda, as "[s]peech at city commission meetings may be restricted to specified subject matter"); <u>Rowe v. City of Cocoa</u>, 358 F.3d 800, 803 (11th Cir. 2004) ("As a limited public forum, a city council meeting is not open for endless public commentary speech but is instead simply a limited platform to discuss the topic at hand."); <u>Jones v. Heyman</u>, 888 F.2d 1328, 1333-34 (11th Cir. 1989) (affirming ability of presiding officer to confine public comment to the agenda topics); <u>see</u> <u>Harris v. City of Valdosta</u>, 616 F. Supp. 2d 1310 (M.D. Ga. 2009) (holding that controlling the meeting agenda is a substantial governmental interest).

Moreover, while the County has allowed for a period of public comment on items not on the agenda, there is no allegation in the Amended Complaint that Plaintiff was denied an opportunity to speak during this period or ever sought to speak.

Plaintiff's request for a declaratory judgment that Defendants violated Plaintiff's First Amendment rights is simply not supported by the law.  For this reason, even assuming that the Plaintiff has standing in this matter, Count I of the Amended Complaint should be dismissed because Plaintiff has failed to establish that Plaintiff's First Amendment Rights have been violated by any Defendant.

C. <u>Plaintiff's Equal Protection Claim in Count II Fails Because the Board, Not Plaintiff, Establishes the Agenda for Its Meetings</u>.

Plaintiff's Equal Protection claim fails because the Amended Complaint does not allege that Plaintiff (or any other citizen) has the legal right to require the Board

to "publicly hear or put to a vote" a request for a government proclamation.  As argued in Section III.A, above, no standing exists if Plaintiff was not injured.

As outlined in Section II.B, above, a proclamation of the Board constitutes government speech outside of the First Amendment.  As outlined in Section I, above, Florida law and County rules provide the process for the Chair, and ultimately, the elected Board to establish the Board's agenda.  The law and procedures governing setting the Board agenda and issuing proclamations do not provide an avenue for <u>any citizen</u> to require an item to be placed on the Board's agenda for a vote on a ceremonial proclamation. <u>See</u> Fla. Stat. § 286.0114(3). Importantly, Defendants' research has not identified any law or authority supporting the claim that Plaintiff or any citizen has the legal right to require the Board to "publicly hear or put to a vote" a request for a government proclamation.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV, § 1; <u>City of Cleburne v. Cleburne Living Ctr.</u>, 479 U.S. 432, 440 (1985). The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.  <u>City of Cleburne</u>, 4749 U.S. at 440.  Plaintiff's case however does not involve the application of legislation or a legal right belonging to Plaintiff or any other citizen.

Equal protection cases generally involve "governmental classification and treatment that affects some discrete and identifiable group of citizens differently from other groups." Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc., 682 F.3d 1293, 1296 (11th Cir. 2012). In the equal protection claim, Plaintiff alleges in a conclusory manner:

> By refusing to even publicly hear or put to a vote the Plaintiff's request for the LGBTQ Pride Proclamation because it deals with the LGBTQ community of St. Johns County, the Defendants, acting under color of state law, have treated Plaintiff differently from all other similarly situated individuals or organizations because the Plaintiff is a member of the LGBTQ Community and because Chairman Blocker disagrees with the idea that LGBTQ persons have the same rights as non LGBTQ persons.

ECF 13 ¶ 52. Missing from this allegation is any factual basis for the conclusions that Plaintiff was allegedly treated differently on the basis of their status as LGBTQ, rather than the government speech Plaintiff requested, or who the allegedly similarly situated individuals or organizations are. More fundamentally, this allegation, and the entire Amended Complaint, is devoid of law or policy that affirmatively gives citizens, including Plaintiff, the legal right to require the Board to hear and vote on a proposed proclamation in its Board meeting. If no such right exists, Plaintiff cannot establish that Plaintiff is being treated differently from other similarly situated individuals; thus, the equal protection claim fails.

Here, there is no law that requires a governmental board to put a citizen's proposed proclamation on the Board's agenda for the purpose of voting on the proclamation. Because the agenda is made at the discretion and direction of

elected Board members, Plaintiff here cannot possibly show that Plaintiff was treated dissimilarly from any other citizen.

The Constitution provides for equal protection of the law, not superior rights to individuals who fall in a protected categories. Here Plaintiff seeks rights superior to all other citizens, namely a declaration from the Court that Plaintiff has the right to require the Board to place on its agenda Plaintiff's proposed proclamation for purposes of a discussion and vote.  As no law or procedure grants this right to others, Plaintiff's equal protection claim should be dismissed with prejudice.

      D.    <u>Count III Does Not Adequately Allege a Violation of Section 286.011 (Florida's Sunshine Law) By Any Defendant.</u>

Plaintiff alleges the County violated the Florida Sunshine Law, specifically § 286.011(1), Florida Statutes, by "making a decision to deny or even publicly hear or put to a vote the Plaintiff's request for the LGBTQ Pride Proclamation . . . outside of any public meeting or forum, and without any records, transcripts, or other records of the deliberations of that secret meeting."  ECF 13, ¶ 64. Nothing in the Sunshine Law required the County or any defendant do otherwise.

Section 286.011 of the Sunshine Law provides that "[a]ll meetings of any board or commission . . . of any agency or authority of any county . . . at which official acts are to be taken are declared to be public meetings open to the public at all times" and that "[t]he board or commission must provide "reasonable notice of all such meetings." § 286.011(1), Fla. Stat., <u>see</u> art. I, s. 24(b), Fla. Const. As noted above, Board meetings are limited public fora and county commission may legally

confine its meetings to specific subject matter.  <u>Thomas v. Howze</u>, 348 F. App'x 474, 478 (11th Cir. 2009). Moreover, not all actions of the County or its officials requires, or constitutes, a "meeting" under the Sunshine Law.

To begin with, though Plaintiff faults the County for not adding the requested proclamation to a board meeting agenda, the Sunshine Law does not actually require public meetings to *have* an agenda at all. <u>Grapski v. City of Alachua</u>, 31 So. 3d 193, 199-200 (Fla. 1st DCA 2010) (affirming trial court conclusion that "Chapter 286 does not require that specific items to be considered by a public body be listed in advance of the meeting on an agenda" or prohibit the public body from deviating from the published agenda); <u>see</u> <u>Hough v. Stembridge</u>, 278 So. 2d 288, 290-91 (Fla. 3d DCA 1973) (holding that drawing up agenda "is an integral part of the actual mechanics and procedures for conducting that meeting and, therefore, aptly relegated to local practice and procedure as prescribed by city charters and ordinances.") When there is a published agenda, the public body may still deviate from it without running afoul of Sunshine. <u>Law & Info. Servs., Inc. v. City of Riviera Beach</u>, 670 So. 2d 1014, 1016 (Fla. 4th DCA 1996) ("[I]f a meeting itself is properly noticed, there is no requirement in the [Sunshine Law] that a governmental body give notice of potential deviations from a previously announced agenda."). As described above, the County has adopted rules for setting an agenda for its meetings and allowing for changes to the agenda at the meeting.

Having elected to establish rules for preparing an agenda, the County does not then violate Sunshine by not opening the agenda setting process to public

participation. Under Rule 4.301, the County Administrator prepares a tentative agenda, which the Chair then reviews and may revise and prioritize before setting it. Setting the agenda is a duty of the Chair spelled out in the Rules and Policies, which were duly adopted by resolution of the Board. In fulfilling the duty, the Chair exercises powers unique to his position, not those of the Board as a whole. City of Sunrise v. News & Sun-Sentinel Co., 542 So. 2d 1354 (Fla. 4th DCA 1989) (holding that mayor's performance of duties assigned by city charter did not constitute a "meeting" under § 286.011, Fla. Stat.). Since setting the agenda is a function of the Chair, not a delegated authority of the Board, the process of doing so is not a "meeting" of the Board under the Sunshine Law and, so, is not required to be open to the public.

Procedural or administrative requirements similar to setting an agenda— even those that involve more than one member of a governmental body—do not necessarily implicate the Sunshine Law. For example, in an informal advisory opinion issued in 2007, the Florida Attorney General's Office did not find a violation of the Sunshine Law in a provision of the Wakulla County board meeting rules that required a commissioner desiring to withdraw an item from the consent agenda to submit a written request to the chairman at least twenty-four hours before the meeting. AGO Informal to Kessler, Nov. 14, 2007, **Exhibit 1**. The Attorney General concluded that, despite the fact that it required communication between commissioners, the process was not a "meeting" under the Sunshine Law

because it was merely an allowable administrative requirement to create a written record on an item due to be discussed at the regularly scheduled meeting.

The Attorney General similarly advised in 2003 that a charter provision allowing three members of the city council of Fort Walton Beach to call a special meeting of the council did not violate Sunshine, as long as the members did not discuss substantive issues in making the request. AGO Informal to Spencer, Apr. 23, 2003, **Exhibit 2**; see also State Dep't of Mgmt. Servs. v. Lewis, 653 So. 2d 467, 469 (Fla. 1st DCA 1995) (holding that order of reconsideration by chair of State Retirement Commission did not violate Sunshine Law). Such procedural and administrative provisions surrounding the calling and scheduling of public meetings do not implicate the Sunshine Law.

The practical reasons for such a conclusion is fairly clear, as an extended regression of public meetings—with meetings to plan meetings to plan meetings, etc.—would substantially interfere with and delay actually bringing the substantive item of public business to public body for action. To the extent that there might be a concern that not opening the agenda-setting process to the public could limit free speech or public participation, the public is free to speak on any matter "which reasonably may need attention of the Board" during the period for general public comment, even if the matter is not on the agenda. Rule 4.704.C.

For these reasons, Plaintiff's conclusory allegations that Defendants violated § 286.011(1) reflects a misunderstanding and misapplication of the Sunshine Law and its requirements, warranting dismissal of Count III.[3]

E.   Count IV Alleging a Violation of Fla. Stat. § 286.0114

In paragraph 67 of the Amended Complaint, Plaintiff alleges that Defendants "violated Art. I, § 24(b) of the Florida Constitution and Florida Statute § 286.0114, by removing the proposed proclamation from the Board agenda and refusing to allow members of the public, or even other commissioners to discuss or vote on it."  But Article I, § 24(b) only provides that Board meetings "at which official acts are to be taken or at which public business of such body is to be transacted or discussed, shall be open and noticed to the public," not that the public must be given an opportunity to speak during the meetings. And, then, § 286.0114 only requires that "members of the public shall be given a reasonable opportunity to be heard <u>on a proposition before a board or commission</u>." Fla. Stat. § 286.0114(2) (emphasis added). The Amended Complaint (rightly) does not allege that the proposed proclamation was ever placed on the Board's agenda, but, instead, that "the request to put [the proposed proclamation] on the agenda had been denied."  ECF 13, ¶ 15.  As the proclamation was never a proposition before the Board, public comment was not required under § 286.0114.

---

[3] Plaintiff also appears to confuse the Florida Sunshine Law with the Florida Public Records Act, Chapter 119, Florida Statutes, in paragraph 65's reference to the claim of "deliberately avoiding any 'paper trail." The Sunshine Law and the Public Records Act, while perhaps similar in purpose, are distinct statutes with separate causes of action. Defendants do not read Count III to include a Public Records Act claim and deny violating either law.

Even so, as noted earlier, the Board's Rules and Policies do allow for general public comment on matters not on the agenda. Rule 4.704(C). The Amended Complaint contains no allegation that the Defendants stopped Plaintiff from participating in general public comment or, indeed, that Plaintiff ever attempted to avail themselves of that forum in the first place.

Finally, had the proclamation been added to the agenda, § 286.0114(3)(b) expressly excludes the requirement of public participation in this portion of the meeting. Section 286.0114(3)(b) excludes from the public participation provisions of the statute, "An official act involving no more than a ministerial act, including, but not limited to, approval of minutes and <u>ceremonial proclamations</u>." (emphasis added). Count IV should therefore be dismissed with prejudice.

F.   <u>Count V Should Be Dismissed Because No Private Cause of Action Exists for Violating the Board's Rules and Policies and Plaintiff Has Failed to Allege Such a Violation.</u>

In Count V, Plaintiff seeks a declaratory judgment that Defendants violated St. Johns County Board Rules and Policies by not adding the proclamation to the agenda. Beyond conclusory allegations, though, there is no factual support in the Amended Complaint for such a claim. Even if there were, no cause of action exists.

Rule 4.303 provides:

> Changes to the Regular Agenda may be proposed by any Commissioner, the County Administrator or the County Attorney. Changes to the Regular Agenda must be approved by majority vote.

As indicated above in Section III, the County has complied with the law and its rules governing setting the Board agenda. Though the Amended Complaint alleges

that Commissioner Dean supported the proposed proclamation and that he "indicated that he would be broaching the Chair and Administrator for the proclamation to be placed on the agenda," there is no allegation that he actually made a request and that his request was improperly denied.

Importantly, though, there is no basis for a private cause of action under County rules, even where a violation of the rule to have been properly pleaded. To the contrary, Rule 1.104 explains that the purpose of "the Rules and Policies are for the efficient operation of the Board. Non-compliance of any particular Rule shall not independently be grounds for the invalidation of any Board action." ECF 10-1. Plaintiff's demand for attorney's fees in connection with the alleged rules violation is also not supported by any statute or law. For these reasons, the Count V claim is meritless and should be dismissed with prejudice.

> G.   <u>The Claims Against Chairman Blocker Should Be Dismissed.</u>

Though the entirety of the Amended Complaint is due to be dismissed, should the Court find some basis to allow any claim to continue, it should nevertheless dismiss Plaintiff's claims against Mr. Blocker in both his personal and official capacities. A suit against a governmental official in his official capacity is a suit against the governmental entity of which the employee is an agent. <u>Mitchell v. City of Bartow</u>, Case No. 8:18-cv-1088-T-23CPT, 2019 WL 7193878, at *10 (M.D. Fla. Dec. 29, 2019) (citing <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991) and <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71, (1989)). It is superfluous to name both Mr. Blocker in his official capacity and the County.

As for the allegations against Mr. Blocker in his personal capacity, Plaintiff is required to allege sufficient facts to show that he caused a depravation of Plaintiff's federal rights.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Not only has Plaintiff failed to meet this burden generally, as shown above, Plaintiff has failed specifically with respect to Mr. Blocker. The Amended Complaint alleges only conclusory allegations relating to Mr. Blocker and, then, only address actions taken in his role as the Chair of the Board, which includes setting the agenda for Board meetings.   Accordingly, both the official and personal capacity claims against Mr. Blocker should be dismissed with prejudice.

H.    <u>The Amended Complaint Should Be Dismissed As a "Shotgun" Pleading.</u>

Should the Court not find the Amended Complaint lacking for the substantive reasons discussed above, it should nevertheless be dismissed for failure to meeting pleading standards. A dismissal for failure to comply with Rules 8(a)(2) and 10(b) is appropriate under a court's "inherent authority to control its docket and ensure prompt resolution of lawsuits." <u>Weiland v. Palm Beach Cty. Sheriff's Office</u>, 792 F.3d 1313, 1320 (11th Cir. 2015). Dismissal under Rule 8(a)(2) or Rule 10(b) is warranted if "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." <u>Id.</u> at 1325.  The Amended Complaint incorporates the same 29 paragraphs in Counts I-III and incorporates every paragraph contained in Count III into Count IV.  All allegations address "Defendants" without any distinction concerning the claims between the Board

and Mr. Blocker.  Comingling claims is impermissible and leads to confusion.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" Weiland, 792 F.3d at 1320. Shotgun pleadings "unnecessarily tax the time and resources" of courts. Keith v. DeKalb Cty., 749 F.3d 1034, 1045 n.39 (11th Cir. 2014). Consequently, the Eleventh Circuit has "roundly, repeatedly, and consistently condemn[ed]" them. Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979 (11th Cir. 2008); see also Byrne v. Nezhat, 261 F.3d 1075, 1130 (11th Cir. 2001) (stating "shotgun pleadings wreak havoc on the judicial system."). When faced with a shotgun complaint, the Eleventh Circuit encourages courts to demand repleading." Bailey v. Janssen Pharmaceutica, Inc., 288 F. App'x. 597, 603 (11th Cir. 2008) (citations omitted).

## IV.    Conclusion

The allegations of the First Amended Complaint reflect that Plaintiff lacks Article III standing; therefore, the Court, as a matter of law, lacks jurisdiction to hear Plaintiff's claims.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). Dismissal is further appropriate as a matter of law on substantive grounds because Plaintiff has not properly alleged that Plaintiff suffered a constitutional injury in Counts I and II, Plaintiff has failed to establish a violation of the Florida Sunshine Law in Counts III and IV; and no cause of action exists for the violation of St. Johns County rules alleged in Count V.

**MARKS GRAY, P.A.**

*/s/ Susan S. Erdelyi*

Susan S. Erdelyi, Esquire
Florida Bar No.:  0648965
1200 Riverplace Blvd., Suite 800
Jacksonville, Florida  32207
Phone:  (904) 398-0900
Fax:  (904) 399-8440
serdelyi@marksgray.com
jmcduffie@marksgray.com
Attorney for Defendants

## CERTIFICATE OF SERVICE

I CERTIFY that on this 9th day of August, 2021, a true and correct copy of the foregoing document was electronically filed in the U.S. District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to:

Rook Elizabeth Ringer, Esquire
Lento Law Group, P.A.
222 San Marco Avenue, Suite C
St. Augustine, FL 32084
reringer@lentolawgroup.com
*Attorney for Plaintiff*

*/s/    Susan S. Erdelyi*
Attorney